IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| In the Matter of the Detention of | ) | No. 77656-8-I |
| | ) | |
| S.T., | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: March 4, 2019 |

SCHINDLER, J. — S.T. filed a notice of appeal more than 50 days after the court entered a 14-day order of commitment for involuntary treatment. We deny the motion to enlarge the time to file the notice of appeal and grant the motion to dismiss the appeal as untimely.

## 14-Day Involuntary Treatment Commitment Order

On September 27, 2017, 21-year-old S.T. ran into a local business to hide because "someone is going to kill him." The police took S.T. to Overlake Medical Center emergency room for evaluation and treatment. S.T. told the social worker he "bought a gun to kill himself with." On September 28, S.T. was transferred to Fairfax Health hospital.

The State filed a "Petition for 14 Day Involuntary Treatment." The petition alleged S.T. presents "a likelihood of serious harm to self" and is "gravely disabled . . . as a result of a mental disorder." The petition states, "[T]here are no less restrictive alternatives to detention in the best interest of the respondent or others because the respondent requires the monitoring and stabilization of an inpatient psychiatric hospital."

Licensed clinical psychologists Dr. Richard Thomas and Dr. Sonja Kottke testified at the probable cause hearing on October 2.

Dr. Thomas testified that S.T. told Overlake hospital social worker Jenny Donovan that "someone is trying to kill him." S.T. said he "almost killed himself last week when he purchased [a] gun and was going to shoot himself." S.T. said the "gun and bullets are stored in the car."

Dr. Kottke testified that she evaluated S.T. and reviewed his medical records. On September 28, S.T. presented as "tangential, difficult to redirect, stuck on one subject, repeating himself over and over." S.T. "described visual hallucinations" but was "much calmer than described while in the E.D."[1] S.T. denied "feeling suicidal" and "does not believe he has a mental health issue." On September 30, S.T. "presented with anxious mood, congruent affect, and linear thought process." S.T. "seemed to be confused and disorganized" and his "mood is very unstable." On October 1, S.T. said he "feels paranoid at times." S.T. was "anxious and afraid of the surroundings. States others might attack him while in bed at night. Needs repeated, constant reminder that his is safe." S.T. was "loose, disorganized, with grandiose delusions. His affect is suspicious and withdrawn." S.T. "has been compliant with medications and sleeping and eat adequately."

Dr. Kottke testified that S.T. has a "working diagnosis [of] psychosis unspecified" that requires "additional time to monitor." Dr. Kottke testified S.T. "presents a substantial risk of physical harm to himself" because he said he "had purchased a gun and had a gun and bullets in his car. He was living in his car. That he had felt suicidal . . . [a]nd that he had thought about killing himself." Dr. Kottke testified that S.T. is

---

[1] Emergency department.

2

"gravely disabled as a result of his mental disorder." Dr. Kottke recommended "[i]npatient psychiatric hospitalization" and said S.T. "needs monitoring in the hospital on medications to work on stability and medication management."

On October 2, 2017, the court entered the 14-day involuntary treatment commitment order. Two days later on October 4, Fairfax hospital released S.T.

On November 22, S.T. filed a notice of appeal of the October 2 order. On April 16, 2018, S.T. filed the brief of appellant arguing his attorney provided ineffective assistance of counsel by stipulating to the admission of medical records.

On June 15, the State filed the brief of respondent. The State argued the court should dismiss S.T.'s appeal as untimely. If the court reached the merits, the State argued S.T. could not establish ineffective assistance of counsel.

On July 16, S.T.'s appellate attorney requested a 15-day extension to file the reply brief. We granted an extension to July 31. On July 31, the attorney requested a 1-week extension to file the reply brief. We granted an extension to August 7. On August 7, S.T.'s attorney requested "an additional two weeks" to file the reply brief to obtain information about why the appeal was not timely filed and a motion to enlarge time to file the notice of appeal. We granted the motion for an extension to August 21 but stated, "[N]o further extensions" would be granted. The appellate attorney did not file a reply brief or a motion to enlarge the time to file the notice of appeal by the August 21 deadline.

Motion to Dismiss and Motion to Enlarge Time to File Appeal

On November 26, 2018, the State filed a motion to dismiss review of the case "for failure to file a timely notice of appeal" under RAP 5.2(a). The State argued S.T. did

not establish grounds to enlarge the time to file a notice of appeal under RAP 18.8(a) and "abandoned review" by not timely filing a reply brief or motion to enlarge time to file the appeal.

On December 10, more than 12 months after he filed the notice of appeal, S.T. filed a motion to enlarge time to file the notice of appeal and an answer to the State's motion to dismiss. S.T. conceded the notice of appeal was untimely. S.T. did not address the failure to comply with the August 21 deadline to file a reply brief or a motion to enlarge time to file a notice of appeal.

S.T. contends the court should deny the State's motion to dismiss and grant his motion to enlarge the time to file the notice of appeal "based on extraordinary circumstances and to prevent a gross miscarriage of justice."

RAP 5.2(a) provides that a party must file a notice of appeal within "30 days after the entry of the decision of the trial court that the party filing the notice wants reviewed." RAP 18.8(a) allows the appellate court to "enlarge . . . the time within which an act must be done in a particular case in order to serve the ends of justice." RAP 18.8(b), "Restriction on Extension of Time," states:

> The appellate court will only in extraordinary circumstances and to prevent a gross miscarriage of justice extend the time within which a party must file a notice of appeal, a notice for discretionary review, a motion for discretionary review of a decision of the Court of Appeals, a petition for review, or a motion for reconsideration. The appellate court will ordinarily hold that the desirability of finality of decisions outweighs the privilege of a litigant to obtain an extension of time under this section. The motion to extend time is determined by the appellate court to which the untimely notice, motion or petition is directed.

Under RAP 18.8(b), "the time for filing a notice of appeal will be extended only in extraordinary circumstances and to prevent a gross miscarriage of justice." State v.

Hand, 177 Wn.2d 1015, 308 P.3d 588, 589 (2013). "Extraordinary circumstances" include instances in which "the filing, despite reasonable diligence, was defective due to excusable error or circumstances beyond the party's control." Reichelt v. Raymark Indus., Inc., 52 Wn. App. 763, 765, 764 P.2d 653 (1988). "Negligence, or lack of 'reasonable diligence,' does not amount to 'extraordinary circumstances.' " Hand, 308 P.3d at 589 (quoting Beckman v. Dep't of Soc. & Health Serv., 102 Wn. App. 687, 695, 11 P.3d 313 (2000)). RAP 18.8(b) "clearly favors the policy of finality of judicial decisions over the competing policy of reaching the merits in every case." Reichelt, 52 Wn. App. at 765.

S.T. contends extraordinary circumstances support his motion to enlarge the time to file the notice of appeal because his attorney provided ineffective assistance of counsel by not timely filing the notice of appeal. S.T. contends his inability to contact his attorney constitutes circumstances beyond his control.

To establish ineffective assistance of counsel, S.T. must demonstrate both deficient performance and resulting prejudice. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A defendant alleging ineffective assistance of counsel must overcome " 'a strong presumption that counsel's performance was reasonable.' " State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)).

In support of the motion to enlarge the time to file the notice of appeal under RAP 18.8(b), S.T. submitted a declaration and attached an e-mail exchange with his attorney. In his declaration, S.T. states:

> Shortly after being released, I called my assigned attorney Cherilyn
> Church to ask about filing an appeal. I do not recall exactly how many

times I called; I do remember calling Ms. Church a few times. Ms. Church did not respond to my calls.

S.T. states that "[a]fter not hearing back," he "sent Ms. Church an e-mail." The e-mails attached to his declaration show that on November 22, 2017 at 12:03 p.m., S.T. sent an e-mail to Church with the subject, "FairFax Appeal." At 12:45 p.m., Church responded to S.T. and said, "Can you give me a call ASAP?" and provided her telephone number. Church filed a notice of appeal the same day.

The record shows that S.T. successfully contacted his attorney through e-mail but did not do so until 49 days after he was released from the hospital. The e-mail exchange shows his attorney responded immediately to his e-mail and filed the notice of appeal the same day. Because S.T. has not shown either ineffective assistance of counsel or extraordinary circumstances that justify an extension of time, we deny the motion to enlarge the time file the notice of appeal. We grant the motion to dismiss the appeal as untimely.

WE CONCUR:

6